

EOD
01/23/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RANDALL K. LEATH** | § | |
| xxx-xx-1751 | § | Case No. 06-60393 |
| **and MARILYN LEATH** | § | |
| xxx-xx-7063 | § | |
| P.O. Box 1171, Henderson, Texas 75653 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider the Motion of Henderson Federal Savings Bank and Texas Bank to Compel Distribution of Payments in Accordance with Chapter 13 Plan (the "Motion") filed by Henderson Federal Savings Bank and Texas Bank (collectively "Claimants") in the above-referenced case. The Claimants seek to compel the payment of additional sums of money from the Chapter 13 Trustee based upon a contention that they are each entitled to the payment of additional interest on their respective allowed secured claims encompassing the period from the filing date of this case to the confirmation date. The Trustee objected on the basis that the interest to be paid through the confirmed plan begins to accrue only at confirmation. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

---

[1] This Court has jurisdiction to consider the Movants' motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

## Background

Randall K. Leath and Marilyn Leath (hereinafter "Debtors") filed a voluntary petition for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code on July 20, 2006. On August 18, 2006, Texas Bank filed a single proof of claim in the amount of $42,373.03 based on two promissory notes arising from two separate transactions involving the Debtors. On August 25, 2006, Henderson Federal Savings Bank filed a proof of claim in the amount of $54,716.06, also based on two distinct promissory notes arising from different transactions. Following an initial denial of a proposed plan, the Debtors filed an Amended Chapter 13 Plan on October 26, 2006. It proposed variable payments by the Debtors over a 60-month period. As to the Claimants' respective claims, the plan proposed to pay those claims in a pro rata distribution among other secured creditors without specifying a precise payment amount. The monthly payment amount was simply referenced as "Pro Rata, Month(s) 1-59." Based upon certain pre-hearing agreements reached between the Debtors and various objecting creditors, the Plan was confirmed without objection on January 12, 2007. The confirmation order provided under Section IV that "[A]ll creditors having allowed secured claims (whether filed before or after an Order Confirming Plan is entered) shall be treated in accordance with section 1325(a)(5), except as otherwise specifically set forth herein." Consistent with the procedures established by the Court when confirmation was mandated under BAPCPA to occur prior to the passage of the bar date for claims,

¶ 1(I)(b) of the confirmation order also provided, in part, as follows:

> The Trustee shall file and serve all parties in interest with the Trustee's Recommendation Concerning Claims within thirty (30) days of the latter of entry of this Order or the claim filing deadline for all creditors (including a government unit). Such Trustee's Recommendation Concerning Claims shall include the Trustee's objections to claims, if any, recommendations as to the extent and validity of each creditor's security interest, if any, and recommendations as to the value of any collateral not previously valued by the Court.

The Trustee subsequently filed his Trustee's Recommendation Concerning Claims (the "TRCC"), which objected to the consolidated manner in which each Claimant had presented its two distinct secured claims. In response thereto, each Claimant objected to the approval of the TRCC and eventually split its respective consolidated claim into two separate claims.[2] With all objections having been resolved, the parties tendered a proposed agreed order to the Court approving the TRCC and the Court entered that certain "Order Approving Trustee's Recommendation Concerning Claims with Modification as Set Forth Herein" on April 11, 2007, which provided, in relevant part, that:

> It is therefore ORDERED, ADJUDGED AND DECREED that the Trustee's Recommendation Concerning Claims is hereby approved with the following modification:

---

[2] Texas Bank bifurcated its original proof of claim into two separate secured claims in the amounts of $23,606.00 and $18,767.03. Likewise, Henderson Federal Savings Bank bifurcated its original proof of claim into two separate secured claims in the amounts of $13,468.06 and $41,248.00.

> The following claims will be paid in the Plan in the following manner consistent with the terms of the confirmed Chapter 13 Plan:
>
> Trustee will pay Texas Bank its claim amount of $23,606.00 as set forth in the amended Court Claim #12-2 and as secured by the collateral as described in said claim (Equipment including 2005 Kubota tractor) on a pro-rata basis at 9% interest over months 1-59.
>
> Trustee will pay Texas Bank its claim amount of $18,767.03 as set forth in the amended Court Claim # 12-3 and as secured by the collateral as described in said claim (2005 horse trailer and truck bed) on a pro-rata basis at 9.75% interest over months 1-59.
>
> Trustee will pay Henderson Federal Savings Bank its claim amount of $13,468.06 as set forth in amended Court Claim #14-2 and as secured by the collateral as described in said claim (2005 Ford F150 Pickup Truck) on a pro-rata basis at 7.99% interest over months 1-59.
>
> Trustee will pay Henderson Federal Savings Bank its claim amount of $41,248.00 as set forth in amended Court Claim #14-3 and as secured by the collateral as described in said claim (2006 Ford F250 Pickup Truck) on a pro-rata basis at 9.01% interest over months 1-59.[3]

On or about May 2, 2007, the Claimants received their first plan distributions from the Trustee, which did not include the payment of interest as calculated from the petition date through the date of confirmation. On June 14, 2007, the Claimants filed the present motion to compel the Trustee to pay such additional interest for months arising in the post-petition, pre-confirmation period to which the Trustee timely objected.

---

[3] See *Order Approving Trustee's Recommendation Concerning Claims with Modification as Set Forth Herein* entered on April 11, 2007 (dkt #98).

**Discussion**

With regard to the payment of interest on claims in a bankruptcy case, bankruptcy practitioners (and even judges) often refer to "paying interest" in a rather backhanded, imprecise manner, with the circumstances of the discussion supplying the necessary context to determine exactly what type of "interest" is being contemplated. However, a dispute such as the one presented to the Court in this instance requires a greater degree of precision, making it imperative to differentiate between a creditor's entitlement to interest as a *component* in the determination of the amount of an allowed claim as distinguished from the payment of interest *upon* that allowed claim, when its amount is finalized, in order to meet the requirements for confirmation of a proposed plan of reorganization. As stated in one recognized treatise:

> A distinction must be drawn in the chapter 11, 12 and 13 contexts between postpetition interest and postconfirmation interest. In these contexts, postpetition interest refers to interest that accrues on a prepetition claim for the period measured between the commencement of the case and the effective date of a confirmed plan. Postconfirmation interest refers to any interest that may accrue on a secured claim on or after the effective date of a plan.

4 COLLIER ON BANKRUPTCY ¶ 506.04[2] at p.506-105 (15th ed. rev. 2007); *see also, Rake v. Wade*, 508 U.S. 464, 468 (1993) [noting the general recognition that any entitlement to post-petition interest under §506(b) "applies only from the date of filing through the confirmation date."].

With limited exceptions,[4] the general rule as to a creditor's entitlement to post-petition interest as a component of an allowed claim is that the accrual of interest ceases as of the date of the filing of the bankruptcy petition. This proposition is reflected not only in numerous bankruptcy and appellate court opinions, *see, e.g.*, *Chemical Bank v. First Trust of New York, N.A. (In re Southeast Banking Corp.)* 179 F.3d 1307, 1309 (11th Cir. 1999); *Kellogg v. U.S. (In re West Texas Marketing Corp.)*, 54 F.3d 1194, 1197 (5th Cir. 1995), but even in decisions of the United States Supreme Court over the past 100 years. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246 (1989) [acknowledging "a pre-Code rule that the running of interest ceased when a bankruptcy petition was filed"]; *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 372-73 (1988) [recognizing the general rule disallowing post-petition interest on undersecured claims and finding that "[S]ection 506(b)'s denial of postpetition interest to undersecured creditors merely codified pre-Code bankruptcy law, in which that denial was part of the conscious allocation of reorganization benefits and losses between undersecured and unsecured creditors."]; *Vanston Bondholders' Protective Committee v.*

---

[4] The payment of post-petition interest is generally allowed only in the limited (and unusual) circumstances in which: (1) under §506(b), the value of a creditor's collateral exceeds the amount of its claim; or (2) when the liquidation of the debtor under Chapter 7 reveals a state of solvency wherein, under §726(a)(5), such unexpected proceeds in excess of the aggregate amount of allowed claims are distributed as interest at the legal rate to the creditor body rather than being returned to the debtor. A third exception, when a creditor's collateral generates income in the post-petition period, was recognized in pre-Code jurisprudence but its viability today has been seriously questioned. See Dean Powlowic, *Entitlement to Interest under the Bankruptcy Code*, 12 BANKR. DEV. J. 149 (1995). Regardless, neither of the latter two exceptions are applicable to the current dispute and, as explained below, the application of §506 for the allowance of post-petition interest is precluded in this context through the application of §1325(a)(*).

*Green*, 329 U.S. 156, 163 (1946) ["The general rule in bankruptcy and in equity receivership has been that interest on the debtors' obligations ceases to accrue at the beginning of proceedings."]; *Sexton v. Dreyfus*, 219 U.S. 339, 344 (1911).[5]

Since the adoption of the Bankruptcy Code, this general rule as to the impact of interest in the determination of an allowed claim has been implemented through 11 U.S.C. §502(b), which directs a court to determine the amount of a claim "as of the date of the filing of the petition." That statutory directive thereby authorizes, in the calculation of an allowed claim, the inclusion of all interest which accrued on the underlying obligation prior to the petition date, but it implicitly excludes any interest which would have, in the absence of the bankruptcy petition, continued to accrue on that debt subsequent to that petition date. To the extent that further confirmation of that prohibition was needed, the exclusion of post-petition interest in the composition of an allowed claim is then overtly stated in §502(b)(2), which makes any claim for unmatured interest (as of the petition date) a specifically-enumerated ground for objection to the allowance of that claim.

Thus, in the absence of an applicable exception, the payment of post-petition

---

[5] In that case, Mr. Justice Holmes noted the following:

> We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another state. No one doubts that interest on unsecured debts stops.

*Sexton*, 219 U.S. at 344.

interest as a component of an allowed claim is statutorily precluded. While the Claimants under different circumstances might have invoked the exception provided in §506(b) for the payment of post-petition interest to an oversecured creditor, that exception was rendered unavailable to the Claimants in this instance because the Plan as confirmed applied the provisions of §1325(a)(*) to these claims, thereby precluding any reference to §506 in its entirety. As a result, while the invocation of §1325(a)(*) protected these claims from bifurcation under §506(a), its broad prohibition also had an unintended negative consequence as to these Claimants — it preempted any application of §506(b) to these claims, thereby eliminating any right that these Claimants might have otherwise possessed to the payment of post-petition, pre-confirmation interest on these claims.[6] *See* David Carlson, *Cars and Homes in Chapter 13 after the 2005 Amendments to the Bankruptcy Code*, 14 AM. BANKR. INST. L. REV. 301, 348 (2006) [noting that the application of §1325(a)(*) to a claim would not only preclude any reference to §506(b) for any entitlement to post-petition interest by an oversecured lender, but that such lender could never show that it was oversecured in any event since "the thrust of the hanging paragraph is that the value of the [collateral] always equals the amount that is owed."]. Though the application of §1325(a)(*) blocks any access to the rights outlined in §506, all

---

[6] Though stated otherwise in the proofs of claim, the Claimants asserted at the hearing that the claim amounts did not actually contain any calculation of post-petition, pre-confirmation interest. They did, however, acknowledge that the claim amounts included an assessment of post-petition attorneys' fees. However, those issues are outside the scope of this dispute since no party objected to the claim amounts within the time period set by the Court.

other statutory provisions, including those in §502, remain applicable. Therefore, because there is no exception available in these circumstances, the general rule applies, and any entitlement asserted by these Claimants to the payment of post-petition interest from the date of the bankruptcy petition to the date of confirmation is statutorily precluded by the provisions of the Bankruptcy Code.

Since these Claimants cannot compel the payment of post-petition interest as a component of their claims, the only other foundation upon which their demand on the Trustee can be based is the payment of post-confirmation interest — that is, the interest required to be paid in order to meet the confirmation standards of §1325(a). Specifically,

> unless the creditor accepts the plan or the debtor surrenders the collateral to the creditor, §1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim must equal the present dollar value of such claim as of the confirmation date. . . . [s]ection 1325(a)(5)(B) requires all holders of allowed secured claims to be paid the present value of such claims, which implies the payment of interest.

*Rake*, 508 U.S. at 469-70. This assessment of post-confirmation interest is required in recognition of the fact that "a debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment." *Till v. SCS Credit Corp.*, 541 U.S. 465, 474 (2004). Thus, in recognition of the time-value of money, a debtor who seeks to pay

an allowed secured claim through a stream of future installment payments, in lieu of tendering the entire amount of the claim on the effective date of the plan, is required to discount that stream of payments to a present value that is not less than the allowed amount of the secured claim.  This is accomplished by applying an appropriate rate of interest to the allowed amount of the claim so that the creditor receives an amount equivalent to the amount that the creditor would have received if its claim had been paid as of the effective date of the plan.  *Key Bank v. Harko (In re Harko)*, 211 B.R. 116, 119-20 (B.A.P. 2d Cir. 1997);   *See generally* 7 NORTON BANKRUPTCY LAW & PRACTICE 3d §151:14 at p.151-89 (2008); 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY ¶ 111.1 at p. 111-1 (3d ed. 2000 & Supp. 2004).  However, because the Claimants' position would be inconsistent with the specific purpose for which any post-confirmation interest is required in this context, the payment of post-confirmation interest on an allowed secured claim pursuant to a confirmed plan of reorganization, as a matter of law, could only begin to accrue as of the effective date of the confirmed plan.[7]  To hold otherwise would result in the receipt by secured creditors of more interest than the amount necessary to preserve the present value of their claims, to the detriment of junior creditors.  As stated in *In re*

---

[7] Since the confirmed plan in this case did not identify a precise date to be used as the effective date of the plan, it appears that the Trustee, apparently for ease of reference, simply chose the confirmation date as the date from which the interest payments should be calculated, even though it would appear as if the earliest date which could technically serve as the effective date of the plan would be the date upon which a confirmation order could become final and unappealable and therefore binding upon all parties under §1327.  However the difference in those two sums would likely be negligible.  See generally, 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][i] at p. 1325-35 (15th ed. rev. 2007).

*Denton*, 370 B.R. 441 (Bankr. S.D. Ga. 2007):

> This interest [to meet the present value requirement for confirmation] cannot begin to accrue on an allowed secured claim before the plan is confirmed because the plan itself provides for the rate of interest. Accordingly, interest on allowed secured claims begins to accrue on the date of confirmation. . . . Here, the Trustee calculated accrued interest on allowed secured claims from the date of the filing of the petition. As a result of this error, secured creditors in this case will receive more interest than the amount necessary to preserve the present value of their claims. . . .

370 B.R. at 449. Thus, any attempt by the Claimants to compel the Trustee to calculate post-confirmation interest from any time preceding the effective date of the plan must be denied.

This conclusion is not altered by the language of the confirmed plan. Section 6(A)(ii)(a) provided that the Trustee would "pay to the holder of each allowed secured claim the monthly payment in column (f) based upon the amount of the claim in column (d) with interest at the rate stated in column (e)."  However, rather than specifying a particular monthly payment to each creditor, the plan instead referenced only that the monthly payment to each creditor would be "pro-rata month(s) 1-59." While the language utilized in that section is admittedly not a model of clarity, it essentially provides that the secured claims provided for by the plan under section 6(a)(ii) would be paid a pro rata share of each month's payment tendered to the Trustee in months 1 through 59. In other words, the reference to "months 1-59" in that context is defining the term of

-11-

months for which the Debtors will tender a payment to the Trustee and from which the Trustee will make the pro rata distribution. However, despite the inartful language utilized, the Claimants' contention that the language constitutes a mandate to pay interest on their respective claims from the date of the filing of the petition, as opposed to the effective date, is not a reasonable interpretation of the plan. Such an interpretation is inconsistent with the specific purpose for which post-confirmation interest is required to be paid in this context, which would legally and logically require that the calculation of interest begin with the effective date. Indeed, under the Claimants' proposal, the term "post-confirmation interest" would be a misnomer. Further, since the plan did not specify a precise monthly payment to be paid to each creditor under the plan and any right thereto, if any, was waived by lack of objection, there is no mathematical process available through which the Claimants can demonstrate that the monthly payment each was to receive under the plan must have necessarily included a calculation of interest on any date earlier than the effective date of the plan.[8] Without specific language to support such a significant deviation from the general rule and in light of the policies undergirding the present value requirement, the Claimants' interpretation must be rejected.

The Claimants further contend that, even if the language in the plan did not require the calculation of interest from the date of the petition, such a result is mandated by the

---

[8] By withdrawing their respective objections to the plan and evidencing their agreement to the treatment provided by the plan through the execution of the confirmation order, the Claimants accepted the Trustee's conclusion that the plan payments to be made by the Debtors were sufficient to make the pro rata distribution scheme financially feasible.

language contained in the order approving the TRCC.[9] However, that contention must be rejected on two grounds. First, the language in the TRCC approval order suffers generally from the same imprecise language contained in the plan and the same conclusions must apply. While the inclusion of the term "over" in the TRCC order (which was absent from the language in the proposed plan) arguably provides some additional support for the Claimants' position,[10] it is equally plausible to construe that language as defining the term of months over which the pro rata distributions by the Trustee would be made. Secondly, and of greater import, is the fact that the payment of interest in satisfaction of the requirements of §1325(a)(5)(B)(ii) is not governed in any sense by the TRCC.[11] It is governed solely, and exclusively, by the terms of the confirmed Chapter 13 plan. The only thing that the TRCC does with regard to the

---

[9] Though the confirmation order was also referenced in the title of the Claimants' motion, it contains no language directly affecting the determination of this issue, nor is any of its provisions cited in the actual motion.

[10] The approval order provides that the "Trustee will pay [the claim] . . . on a pro rata basis at 9% interest over months 1-59."

[11] The TRCC is simply a mechanism by which the Chapter 13 Trustee attempts to initiate the necessary process of reconciling allowed claims in a particular case with the requirements of the confirmed Chapter 13 plan in that case which, though binding on all parties, was required by the Code to be confirmed prior to the time that some of the claims were even filed. The TRCC explains the methodology by which the Chapter 13 Trustee intends to implement the terms of the confirmed plan in light of the claims now fully revealed. While the Trustee possesses the power through the TRCC to seek such a reconciliation by directly challenging the allowance of claims, he is more likely to defer to the Chapter 13 debtor for such action who is in a more advantageous position to evaluate the legitimacy of claims and to challenge the allowance of any improper claim. However, through his power to seek dismissal of the case for infeasibility, the Trustee has the capacity to hold a debtor ultimately responsible for any failure to reconcile the filed claims with the confirmed plan.

payment of post-confirmation interest is to recite the interest rate previously established by the confirmed plan. The TRCC in this district does not constitute a modification of the confirmed plan and it therefore cannot effectuate a change in the interest rate established by the confirmed plan — an interest rate which is binding both upon the Trustee and the affected secured creditors.

## Conclusion

For the foregoing reasons, the Court concludes that the Motion of Henderson Federal Savings Bank and Texas Bank to Compel Distribution of Payments in Accordance with Chapter 13 Plan, Order Confirming Plan and Order Approving Trustee's Recommendation Concerning Claims must be denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[12] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052. An appropriate order will be entered which is consistent with this opinion.

Signed on 01/23/2008

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[12] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.